IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BRIDGET PIPKINS                                                    PLAINTIFF

v.                                  CASE NO. 06-6054

PIKE COUNTY, ARKANSAS:
SHERIFF JERRY JONES, in his individual and official
capacity as Sheriff of Pike County;
JACK NARON, in his individual and official capacity as a
Deputy Sheriff of Pike County; and
TERRY SIMMONS, in his individual and official capacity
as a Deputy Sheriff of Pike County                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff alleges her rights were violated on October 8, 2005 by the Defendants' use of

excessive force. She complains of violations under 42 U.S.C. § 1983, the Fourth, Fifth, and

Fourteenth Amendments to the U.S. Constitution; the Arkansas Civil Rights Act of 1993; the

Constitution of the State of Arkansas; as well as the tort of battery.

The Defendants filed a Motion for Summary Judgment (Doc. 7), contending the

Plaintiff's claims fail as a matter of law. For the reasons set forth herein, the motion is

GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff was arrested and incarcerated in the Pike County jail on October 8, 2005. At

approximately 1:40 a.m., Separate Defendants Naron and Simmons, Pike County Deputy

Sheriffs, entered Plaintiff's cell, where according to Plaintiff's Complaint, she was lying on the

floor. (Doc. 1). Plaintiff contends that after Separate Defendants Naron and Simmons entered

AO72A
(Rev. 8/82)

the cell, Separate Defendant Naron used an electronic device known as a "taser" on her several

times. Plaintiff alleges she was not presenting any threat at any time the device was used. (Doc.

1).   Separate Defendant Jones, the Sheriff of Pike County, conducted an investigation and

concluded Separate Defendants Naron and Simmons were acting in accordance with

departmental policies. (Doc. 1).

## STANDARD OF REVIEW

Summary judgment is appropriate only where there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(c).  The burden

of proof is on the moving party to set forth the basis of its motion. *Celotex Corp. v. Catrett*, 477

U.S. 317 (1986).  The Court must view all facts and inferences in the light most favorable to the

nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 (1986).  "The non-

moving party, however, must still "present evidence sufficiently supporting the disputed material

facts that a reasonable jury could return a verdict in [their] favor." *Pope v. ESA Services, Inc.*, 406

F.3d 1001, 1003-4 (8th Cir.  2005) (quoting *Gregory v. City of Rogers, Ark.*, 976 F.2d 1006, 1010

(8th Cir. 1992)).  Summary judgment is appropriate where a plaintiff fails to present evidence

sufficient to create a jury question as to an essential element of his claim. *Turner v. Honeywell*

*Fed. Manuf. & Tech.*, 336 F.3d 716 (8th Cir. 2003).

## ANALYSIS

### Section 1983 Claim Against Pike County

A county may be sued directly under 42 U.S.C. §1983, or through official capacity claims,

only where "the action that is alleged to be unconstitutional implements or executes a policy

statement, ordinance, regulation, or decision officially adopted and promulgated by [the county's]

2

officers." *Kuha v. City of Minnetonka*, 365 F.3d 590, 603-604 (8th Cir. 2003). A "custom or usage" may be demonstrated by a showing of: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to, or tacit authorization of, such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) injury to the Plaintiff by acts pursuant to the governmental entity's custom.  In evaluating the "custom"of the entity, a court does not restrict its inquiry to the written policy. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386-87 (1989).  It is the policy applied, not the policy written, that must be scrutinized. *Id.*  Furthermore, a single incident does not suffice to prove the existence of a municipal custom. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion).

Public servants may be sued under Section 1983 in their official capacity, individual capacity or both. *See, e.g. Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).  A suit against a public employee in his or her official capacity is merely a suit against the public employer. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Plaintiff has sued Sheriff Jones and Deputy Sheriffs Naron and Simmons in both their individual and official capacities. (Doc. 1).

Plaintiff had a constitutional right to be protected and be free from the alleged abuse and treatment set out within the Complaint (Doc. 1) and her Response to the Summary Judgment Motion. (Doc. 11).  Defendants claim Plaintiff was not subjected to excessive force in violation of her constitutional rights but even if there was a violation of her constitutional rights, they would be entitled to qualified immunity and tort immunity. (Doc. 8).

Defendants contend they were acting in accordance with the policies of Pike County regarding the use of force (Doc. 8, Ex. A) as well as the taser use. (Doc. 8, Ex. B). Further,

3

Separate Defendant Naron stated he completed the Arkansas Law Enforcement Training Academy (Doc. 8, Ex. C) which included training on the proper use of a taser. (Doc. 8, Ex. D). Separate Defendant Naron signed the Law Enforcement Code of Ethics agreeing to use only such force as was reasonably necessary in the performance of his duties. (Doc. 8, Ex. E). Separate Defendant Simmons stated he was aware of the duties and responsibilities of his position as contained within the Pike County Employee Handbook. (Doc. 8, Ex. F).

Pike County may be subject to Section 1983 liability if the Plaintiff can prove the existence of a policy or custom under which the use of force on an individual in custody is exercised in violation of a protected right. In order for Plaintiff to prevail, "there must exist a prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 691 (1978); *Thelma D. v. Board of Education*, 934 F.2d 929, 932-34 (8th Cir. 1991). "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that the city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992), *cert. denied*, 484 U.S. 986 (1987).

In order to prevail on her claim against the county, Plaintiff must show that Separate Defendants Simmons and Naron were implementing or executing a policy officially adopted and promulgated by the county. *Kuha*, 365 F.2d at 603-4.

The County had policies in effect regarding the use of force and the use of a taser. (Doc. 8, Exs. A and B). There is no evidence the County had received or had been deliberately indifferent to any complaints of excessive use of force. The incident involving Plaintiff is the

4

only unconstitutional incident alleged to have occurred and would not be sufficient to establish the existence of a municipal custom. *Tuttle*, 471 U.S. at 823-24. Plaintiff has failed to show that county officials or the sheriff had knowledge of prior instances of misconduct and then deliberately ignored them.

### Section 1983 Claim Against Sheriff Jerry Jones

Separate Defendant Jones may be liable under § 1983 if he directly participated in the misconduct or failed to properly supervise or train Separate Defendants Naron and Simmons. See *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). The standard is whether Separate Defendant Jones was deliberately indifferent to or tacitly authorized the improper conduct. *Id*. This requires a showing that the sheriff had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation. *Thelma D. v. Board of Education*, 934 F.2d 929, 934 (8th Cir. 1991).

Plaintiff has not alleged that Separate Defedant Jones directly participated in the alleged misconduct. Separate Defendant Jones can only be liable if he failed to properly supervise or train Separate Defendants Naron and Simmons. The facts alleged in this case, construed in favor of Plaintiff, the nonmoving party, as we are required to do, do not demonstrate that Separate Defendant Jones failed to properly supervise or train Separate Defendants Naron and Simmons. The County had a policy on the use of force that Separate Defendant Jones stated was read and taught to all of the personnel during all training sessions. This policy states that force is to be used only when reasonably necessary. The Separate Defendant Jones requires each deputy sheriff to read and sign a Code of Ethics. The Sheriff's Department also requires training sessions in the use of a taser before an employee is authorized to use one. (Doc. 8, Affidavit of Sheriff Jones,

5

Ex. 1).  Separate Defendant Naron completed and acknowledged all of the above policies and attended the Arkansas Enforcement Training Academy.  Furthermore, prior to this incident, Separate Defendant Jones received no complaints on either deputy regarding excessive force.

The allegation that Separate Defendant Jones failed to train and supervise the Separate Defendants Naron and Simmons must fail because Plaintiff has not shown that Separate Defendant Jones  was "deliberately indifferent to or tacitly authorized the offending acts." *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994), *cert. denied*, 514 U.S. 1004 (1995). Plaintiff likewise cannot show Separate Defendant Jones had any notice that training procedures and supervision were inadequate and likely to result in a constitutional violation.

To survive a motion for summary judgment, Plaintiff must "present evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in her favor." *Pope v. ESA Services, Inc.,* 406 F.3d 1001, 1003-4 (8th Cir. 2005).  Plaintiff has presented  no evidence that Separate Defendant Jones was deliberately indifferent to or tacitly authorized the improper conduct alleged.

**Section 1983 Claim Against Deputy Sheriff Naron and Deputy Sheriff Simmons**

Plaintiff asserts that Separate Defendants Naron and Simmons used excessive force in violation of the Fourth and Fourteenth Amendments by using a taser where there was no legitimate reason to believe Plaintiff was presenting a threat to anyone.

An excessive force claim is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Kuha v. City of Minnetonka*, 365 F.3d 590, 597 (8th Cir. 2004).  *See also Graham v. Conner*, 490 U.S. 386, 395 (1989).  "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441

6

U.S. 520, 559 (1979), quoted in *Graham*, 490 U.S. at 396. "However, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985), characterizing the inquiry as 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure."). In sum, "the nature and quality of the intrusion on the individual's Fourth Amendment interests [must be balanced] against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983), quoted in *Garner*, 471 U.S. at 8.

The *Kuha* Court went on to state that, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id* at 396-97. "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id* at 397 (citations omitted). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id. Kuha* at 597.

In reviewing the claims of the Plaintiff, substantive law must be applied in the context of

7

the motion for summary judgment. *Kuha* at 597 citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celetex Corp. v. Catrett*, 477 U.S. 317 (1986).  Thus, according to *Kuha*, the relevant inquiry is whether Plaintiff presented sufficient proof in support of her claim that a jury could properly find that the degree of force used against her was not "objectively reasonable."

Plaintiff claims she was lying on the floor  when Separate Defendants  Naron and Simmons entered her cell and used a "taser" on her multiple times. (Doc. 1).  To demonstrate she was not acting in an uncontrolled and dangerous manner, Plaintiff attached the report of Separate Defendant Simmons (Doc. 11, Ex. B) who stated  Plaintiff was "screaming and yelling." Separate Defendant Simmons stated he was unable  to calm her down by talking to her through the cell door.  He further stated that when he and Separate Defendant Naron opened the cell door, Plaintiff was lying on the floor face down and when Naron ordered her to get up and on to her bunk, she refused.  Separate Defendant Simmons stated she sat up but only stared at Naron when he asked her to get up a second time.  Naron told Plaintiff a third time to get on to the bunk and when she refused, he removed the taser.  Simmons stated Naron asked the Plaintiff  if she wanted to get hit with it, and according to Simmons, Naron clicked the taser "a couple of times" before  moving it toward  Plaintiff's leg. At this point, Plaintiff allegedly started kicking at Naron, jumped onto the bunk and yelled even louder.  According to the statement (Doc. 11, Ex. B),  Naron hit Plaintiff with the taser "a couple of times." According to Simmons, the Plaintiff calmed down and he and Naron left the cell. At this point Plaintiff allegedly resumed the screaming again and Separate Defendants decided to ignore her. (Doc. 11, Ex. B).

In considering Plaintiff's claims, genuine issues as to material facts exist as to the events which lead up to the Separate Defendants' use of the taser on Plaintiff.  Separate Defendants

8

claim Plaintiff was yelling and beating her hands and feet on the door and floor.  Separate Defendants claim they were concerned that Plaintiff could potentially harm herself that Separate Defendants Simmons and Naron returned to enter Plaintiff's cell in an effort to calm her.  It was during this period that Separate Defendants tasered Plaintiff. (Doc. 8).  However, the court must view the facts in the light most favorable to the nonmoving party.  Plaintiff contends she was lying in her cell when Separate Defendants entered it and without justification the taser was used on her. (Doc. 1).  Because material facts are in dispute, and a jury could find unreasonable the amount of force used, Separate Defendants cannot prevail on their Motion for Summary Judgment.

### Arkansas Civil Rights Act

Plaintiff contends  the forced used by Separate Defendants was a violation of the Arkansas Civil Rights Act.  Under 28 U.S.C. § 1367, this Court has jurisdiction to hear state law claims where the federal and state law claims form part of the controversy.

The Arkansas Civil Rights Act provides that when construing this statute a court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983. As discussed above, Plaintiff has not presented sufficient evidence to demonstrate county officials or Sheriff Jones had knowledge of prior instances of misconduct and then deliberately ignored them. Plaintiff has also failed to present evidence sufficient to show that Sheriff Jones was deliberately indifferent to, or tacitly authorized, the improper conduct alleged.  Therefore, Plaintiff cannot prevail on her claim under the Arkansas Civil Rights Act against Pike County or Sheriff Jones.

The Court has concluded that material facts are in dispute as to the allegations against

9

Separate Defendants Naron and Simmons in their individual capacities. Therefore, Separate Defendants cannot prevail on their Motion for Summary Judgment on Plaintiff's Arkansas Civil Rights claim.

### Common Law Battery

Public officials named under Ark. Code Ann. § 21-9-301 are immune from tort liability for negligent acts committed in the performance of their duties. *Autry v. Lawrence*, 286 Ark. 501, 696 S.W.2d 315 (1985). The Courts have never interpreted that immunity to include intentional torts committed by those officials and have rejected attempts to do so. *Battle v. Harris*, 298 Ark. 241, 245 766 S.W.2d 431, 433 (1989). See also, *Pennsylvania Nat. Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945 (8th Cir. 2004).

Plaintiff alleged that the use of force by Defendants Naron and Simmons amounted to common law battery[1] under Arkansas law. (Doc. 1). Battery is an intentional act and therefore Separate Defendants would not be entitled to immunity from any such actions. Plaintiff has alleged facts sufficient to support her claim that Defendants Naron and Simmons committed an intentional tort when they entered her cell and used the shocking device. Therefore, Separate Defendants cannot prevail on their Motion for Summary Judgment as to Plaintiff's claim of battery.

### Qualified Immunity

The purpose of qualified immunity is to allow public officers to carry out their duties rather

---

[1]

Battery is a wrongful or offensive physical contact with another through the intentional contact by the tortfeasor and without the consent of the victim, the unpermitted application of trauma by one person upon the body of another person. *Costner v. Adams*, 82 Ark.App. 148, 156, 121 S.W.3d 164, 170 (Ark.App. 2003) citing 6 Am.Jur.2d *Assault and Battery* § 3 (1999).

10

than acting out of fear for their own personal fortunes.  See *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982).  Toward this end, the rule has evolved that an official performing discretionary functions will generally be immune from liability unless a reasonable person in his position would have known that his actions violated clearly established law.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Not only does qualified immunity protect officials from liability, but it also should spare them the disruption and expense of trial in situations where they have acted reasonably.  Accordingly, whether the officer is immune "ordinarily should  be decided by the court long before trial," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)(per curiam), or else much of the benefit of the rule will be lost.  Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law.  *Creighton v. Anderson*, 922 F.2d 443, 447 (8th Cir. 1990).  However, if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment.  *Id*.; *Gainor v. Rogers*, 973 F.2d 1379, 1384-85 (8th Cir. 1992).

"A court engaged in a qualified immunity inquiry uses a two-step process." *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1101 (8th Cir. 2004).  The first question is, taken in the light most favorable to the party asserting the injury, whether the facts alleged show that the official's conduct violated a constitutional right.  *Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If the facts, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right, the second question is whether the right was clearly established. *Id*.

"The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Guite v. Wright*, 147 F.3d

11

747, 750 (8thCir. 1998); *see also Wilson v. Spain*, 209 F. 3d 713, 716 n. 3 (8th Cir. 2000) (stating that "the right to be free from excessive force in the context of an arrest has been clearly established for some time"). "[A]n officer's use of force is not excessive under the Fourth Amendment if it was objectively reasonable under the particular circumstances." *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) (quotation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Conner*, 490 U.S. 386, 396-7 (1989). "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Because Plaintiff has made a sufficient showing to survive summary judgment on her §1983 claim as to Separate Defendants' Naron and Simmons, the Court must consider if Separate Defendants are entitled to qualified immunity for their actions. Taking the facts in the light most favorable to Plaintiff, the facts alleged could show that Separate Defendants Naron and Simmons violated Plaintiff's constitutional right to be free from the use of excessive force. The second step of the inquiry can shield Separate Defendants if their mistake as to what conduct the law required is reasonable. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, Defendants will not be immune "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant should have taken the disputed action." *Winters v. Adams*, 254 F.3d 758, 766 (8th Cir. 2001)(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Plaintiff has alleged she was lying on the floor when Defendants entered her cell and tasered her multiple times. (Doc. 1). Separate

12

AO72A
(Rev. 8/82)

Defendants have alleged  Plaintiff was screaming and beating her hands and feet against the door and floor such that they were concerned Plaintiff might injure herself and they entered the cell in order to calm her down (Doc. 8).  A genuine issue of facts exist that would be material to the second step of the inquiry into qualified immunity, and therefore, it would be inappropriate to grant summary judgment based on qualified immunity.

## CONCLUSION

For these reasons reflected above, Defendants' Motion for Summary Judgment (Doc. 7) is DENIED as to Deputy Sheriffs Simmons and Naron in their individual capacities and GRANTED as to Pike County and Sheriff Jerry Jones.  Defendant's Motion for Summary Judgment as to the claims against Deputy Sheriff Naron and Deputy Sheriff Simmons in their official capacities  is likewise GRANTED.  Having granted the motion as to Plaintiff's federal law claims against Sheriff Jones and Pike County, the Court dismisses the Arkansas Civil Rights claims against Sheriff Jones. *See ACLU v. City of Florissant*, 186 F.3d 1095 (8th Cir. 1999).  Court retains jurisdiction on the state law claims against Separate Defendants Naron and Simmons.  Accordingly, this case will proceed to trial as scheduled on Monday, August 6, 2007, at 9:00 a.m.

IT IS SO ORDERED.

*/s/ Robert T. Dawson*
Honorable Robert T. Dawson
United States District Judge

AO72A
(Rev. 8/82)